JUDGE LYNCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BERKSHIRE PARTNERS LLC,

                Plaintiff,

           -against-

BALL CORPORATION,

                Defendant.
-----------------------------------------------------------x

08 CV 00556

Index No.

**COMPLAINT**

RECEIVED JAN 23 2008 U.S.D.C. S.D.N.Y.

    Plaintiff Berkshire Partners LLC ("Berkshire"), by its attorneys, Ropes & Gray LLP, for its complaint against defendant Ball Corporation ("Ball"), alleges as follows:

**NATURE OF THE ACTION**

    1. Plaintiff brings this action pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to obtain a declaration of the parties' rights and obligations under a certain Agreement and Plan of Merger (the "Merger Agreement"), dated as of February 14, 2006, by and among Ball Corporation, Ball Aerosol and Specialty Container Corporation, U.S. Can Corporation ("U.S. Can") and the Securityholders of U.S. Can Corporation (the "Securityholders"). Pursuant to the Merger Agreement, the Securityholders sold U.S. Can to Ball in exchange for 1,100,000 shares of Ball common stock. Under the terms of the Merger Agreement, the Securityholders agreed to indemnify Ball in the event of breaches of certain representations, warranties or covenants set forth in the Merger Agreement. A portion of the merger consideration was held in escrow to satisfy any valid

indemnification claim by Ball. Pursuant to the Merger Agreement, Berkshire was appointed to be the Securityholders' Representative in connection with the transaction.

2. On June 19, 2007, approximately one week before the remaining merger consideration was due to be released from escrow to the Securityholders, Ball sent the Securityholders a Notice of Claim for Indemnification (the "Notice of Claim"). The Notice of Claim consists of 19 categories of claimed losses (the "Losses") totaling more than $25 million for which Ball is purporting to seek indemnification from the Securityholders under the Merger Agreement.

3. Ball is not entitled to indemnification with respect to most or all of the claimed Losses. Most or all of the Losses claimed in the Notice of Claim are entirely without merit and many are deficient on their face. Accordingly, Berkshire seeks a declaratory judgment from this Court finding that the Securityholders are not obligated to indemnify Ball for Losses set forth in the Notice of Claim.

## THE PARTIES

4. Plaintiff Berkshire Partners LLC is a Massachusetts limited liability company with its principal place of business in Boston, Massachusetts. Berkshire is a private equity firm.

5. Defendant Ball Corporation is an Indiana corporation with its principal place of business in Broomfield, Colorado. Ball is a provider of metal and plastic packaging for beverages, foods and household products, and provides aerospace and other technologies and services to commercial and governmental customers.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and pursuant to Section 11.12 of the Merger Agreement, which provides, in relevant part, that "[e]ach party . . . hereby irrevocably submits . . . to the exclusive jurisdiction of the . . . United States District Court located in the Southern District of New York . . . ."

## FACTUAL BACKGROUND

8. On February 14, 2006, Berkshire and Ball entered into the Merger Agreement, which provided for the sale of U.S. Can to Ball in exchange for 1,100,000 shares of Ball common stock. The merger transaction closed on March 27, 2006 (the "Closing").

9. At the Closing, pursuant to the terms of the Merger Agreement, 451,681 shares of Ball common stock--representing a market value, at that time, of $20,000,000--were withheld from the 1,100,000 shares of merger consideration paid to the Securityholders (the "Held Back Shares").

10. Ball and Berkshire entered into a separate Escrow Agreement (the "Escrow Agreement"), dated as of March 27, 2006, the date of the Closing, governing the disposition of the Held Back Shares. Pursuant to the Escrow Agreement, Citibank, N.A. ("Citigroup") serves as the escrow agent for an escrow account.

11. At the Closing, the Held Back Shares were deposited into the escrow account in order to secure the Securityholders' obligations pursuant to Article IX or Section 6.12 of the

Merger Agreement to pay any valid claim for indemnification by Ball arising out of breaches by the Securityholders of certain representations, warranties or covenants contained in the Merger Agreement. In accordance with the terms of the Merger Agreement, certain of the Held Back Shares were subsequently applied to satisfy a post-Closing working capital adjustment owed to Ball. The remaining Held Back Shares were later sold, and the proceeds of such sale (plus interest on such proceeds) remain in the escrow account.

12. Under the Merger Agreement, a claim for indemnification, pursuant to either Article IX or Section 6.12, is Ball's exclusive remedy for any breach of certain representations, warranties and covenants contained in the Merger Agreement.

13. Pursuant to Section 9.4(a)(ii) of the Merger Agreement, in no event are the Securityholders obligated to make any indemnification payments to Ball that, individually or in the aggregate, exceed the amount of the purchase price paid by Ball to the Securityholders to purchase U.S. Can.

14. Pursuant to the Merger Agreement and the Escrow Agreement, unless Ball filed a notice of claim for indemnification, the Held Back Shares remaining in the escrow account (including the proceeds from any sale of the Held Back Shares) were to have remained in the escrow account for 15 months after the Closing Date. Upon the filing of such an indemnification claim by Ball, and the receipt of a notice of objection to said claim from the Securityholders, the remaining Held Back Shares (including the proceeds from any sale of the Held Back Shares) were to remain in the escrow account pending resolution of the claim for indemnification. In the absence of any notice of claim for indemnification within 15 months of the Closing, the remaining Held Back Shares (including the proceeds from any sale of the Held Back Shares) were to be released to the Securityholders on June 27, 2007.

15. On June 19, 2007, approximately one week before the proceeds of the sale of the Held Back Shares were due to be released from escrow to the Securityholders, Ball sent a Notice of Claim for indemnification to Berkshire, as representative of the Securityholders. The Notice of Claim asserted 19 categories of alleged Losses, purportedly stemming from alleged breaches by the Securityholders of certain representations, warranties and covenants contained in the Merger Agreement. The alleged Losses total $25,431,854.24.

16. Ball also submitted the Notice of Claim to Citigroup in its capacity as escrow agent.

17. The claimed Losses, as set forth in the Notice of Claim, allegedly fall into the following 19 categories:

  (a) $345,000 for unspecified Losses allegedly arising out of a vacation policy change at U.S. Can;

  (b) $176,125.24 for an alleged freight credit that Ball claims to have issued to a U.S. Can customer known as PPG Industries, Inc.;

  (c) $80,000 for an alleged settlement involving a contract with a U.S. Can customer known as Arch Chemicals, Inc.;

  (d) $80,000 for an alleged breach of an alleged exclusive agency agreement with a U.S. Can customer known as JM Gillen;

  (e) $16,213,842 for allegedly defective machine guarding at various U.S. Can plants;

  (f) $25,000 for the alleged disposal of certain chemicals at a U.S. Can plant in Weirton, West Virginia;

(g) $30,000 for alleged soil remediation at U.S. Can plants in Hubbard, Ohio, and Tallapoosa, Georgia;

(h) $25,000 for alleged beryllium remediation at a U.S. Can plant in Atlanta, Georgia;

(i) $1,164,000 for alleged lead remediation at various U.S. Can plants;

(j) $8,000 for an OSHA fine allegedly levied with respect to a U.S. Can plant in Elgin, Illinois;

(k) $2,800 for an OSHA fine allegedly levied with respect to a U.S. Can plant in Weirton, West Virginia;

(l) $3,000 for an OSHA fine allegedly levied with respect to a U.S. Can plant in Tallapoosa, Georgia;

(m) $30,000 for allegedly defective load ratings at a U.S. Can plant in Weirton, West Virginia;

(n) $2,000 for die blocks allegedly required at a U.S. Can plant in Weirton, West Virginia;

(o) $1,509,755 for alleged asbestos abatement at U.S. Can plants in Weirton, West Virginia, and Baltimore, Maryland;

(p) $181,000 for a gas train double block and bleed system allegedly required at a U.S. Can plant in Weirton, West Virginia;

(q) $452,000 for an alleged account receivable allegedly owed by USC Europe;

(r) $2,195,332 for an alleged pricing adjustment relating to a customer known as CRC Industries, Inc.; and

(s) $2,800,000 for a certain Argentine tax matter.

18. Most of the categories of claimed Losses are described in no more than a single conclusory paragraph in the Notice of Claim. Many were asserted months after they had allegedly ripened. Several are either deficient on their face or are grossly exaggerated. Most, if not all, are without merit.

19. Pursuant to the Escrow Agreement, on June 29, 2007, Berkshire, on behalf of the Securityholders, timely served a Notice of Objection to the Notice of Claim, notifying Ball and Citigroup of the Securityholders' objection to Ball's Notice of Claim.

20. As a result, the proceeds from the sale of the Held Back Shares, which were due to be distributed to the Securityholders on June 27, 2007, continue to be held in escrow by Citigroup pending resolution of the matters raised by the Notice of Claim.

21. Since June 29, 2007, in accordance with Section 3(c)(iii) of the Escrow Agreement, Berkshire has made a good faith effort to resolve the dispute raised by Ball's Notice of Claim. Berkshire's efforts in this regard have, however, been hampered by Ball's failure to provide documents, information and access to certain Ball facilities, as specifically requested in writing by Berkshire. Ball has only selectively provided documents and information, and, despite repeated requests by the Securityholders, has failed to provide the Securityholders with access to certain Ball facilities in order to assess certain of the claimed Losses. As a result, Ball has failed to establish the validity of its indemnity claims.

22. The claimed Losses, in whole or in part, do not constitute Losses within the meaning of the indemnification provisions of the Merger Agreement. In particular, the claimed Losses do not arise out of any breach of a representation, warranty or covenant and do not constitute Losses for which the Securityholders are required to indemnify Ball under

the Merger Agreement. Many of the claimed categories of Losses are frivolous on their face. For example, Section 9.4(b) of the Merger Agreement provides that Berkshire and the Securityholders have no obligation to indemnify Ball for any claimed Losses that do not exceed $25,000. Yet the Notice of Claim contains several claimed Losses that are not alleged to exceed this $25,000 threshold.

23. Even if Ball were correct as to its unsupported claim that the Securityholders have breached certain representations, warranties and covenants, Ball has failed to mitigate its damages because the alleged costs of remedying the alleged breaches are grossly inflated and far exceed any actual Losses for which the Securityholders could conceivably be obligated to indemnify Ball.

24. The Notice of Claim also fails to reflect the fact that, pursuant to Section 9.4(a) of the Merger Agreement, any Losses for which the Securityholders could be obligated to indemnify Ball must be reduced by a $1,000,000 deductible applicable to Ball's claim for indemnification. Accordingly, even apart from Ball's unsupportable assertion of claimed Losses of $25,000 and below, Ball's claimed Losses in fact total only $24,431,854.24, and not the $25,431,854.24 set forth in the Notice of Claim.

25. Furthermore, it is Ball, and not the Securityholders, that has breached the Merger Agreement. In particular, Sections 6.12(g) and 9.3(b) of the Merger Agreement provide that in no event shall Ball settle or compromise a Third Party Claim, as defined in the Merger Agreement, without the Securityholders' consent. Certain of the categories of claimed Losses are Third Party Claims within the meaning of the Merger Agreement. Yet, Ball has disregarded the consent provisions of the Merger Agreement and, without providing

Berkshire or the Securityholders with prior notice or obtaining their prior consent, has settled many of the alleged Third Party Claims.

26. In sum, Ball is not entitled to be indemnified for Losses claimed in the Notice of Claim, and Losses that Ball has claimed must, in any event, be reduced as a result of Ball's breaches of the Merger Agreement.

### FIRST CAUSE OF ACTION
### (For a Declaratory Judgment)

27. Berkshire repeats and realleges the allegations contained in paragraphs 1 through 26 of this complaint.

28. An actual controversy exists between the Securityholders and Ball with respect to the respective rights and obligations of the Securityholders and Ball under the Merger Agreement, with respect to the Notice of Claim, with respect to Ball's right to be indemnified for certain alleged Losses, and with respect to the release of the escrowed funds.

29. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Berkshire, as the Securityholders' Representative, is entitled to a declaration that Berkshire and the Securityholders have no obligation to indemnify Ball for Ball's claimed Losses, that Ball is not entitled to indemnification under the Merger Agreement or otherwise for its claimed Losses, and that the proceeds of the sale of the Held Back Shares should be released to Berkshire and the Securityholders forthwith.

WHEREFORE, plaintiff Berkshire Partners LLC respectfully requests that the Court enter judgment:

(a) Declaring that Berkshire and the Securityholders are not required to indemnify Ball for any of its alleged Losses;

(b) Resolving all contractual and other legal issues necessary and sufficient to determine the nature and scope of the alleged obligation that Berkshire and the Securityholders have to indemnify Ball under the terms of the Merger Agreement;

(c) Awarding plaintiff its attorneys' fees, costs and disbursements in this action; and

(d) Granting plaintiff such other and further relief as the Court deems just and proper.

Dated: January 23, 2008

ROPES & GRAY LLP

By _____
Jerome C. Katz
1211 Avenue of the Americas
New York, New York 10036
jerome.katz@ropesgray.com
Tel.: (212) 596-9000
Fax: (646) 728-1846

Attorneys for Plaintiff Berkshire Partners LLC